[Civ. No. 5227. Fourth Dist. Jan. 5, 1956.]

LEROY G. CONNELLY et al., Respondents, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Executor, etc., et al., Appellants.

Head, Jacobs, Corfman & Jacobs for Appellants.

Chas. D. Swanner for Respondents.

MUSSELL, J.—This is an action to quiet title and for cancellation of a promissory note and trust deed. Plaintiffs executed the note involved on May 16, 1953. It was for $4,000 and was payable to H. G. Gooder and Helen O. Gooder, or order, in quarterly installments of $166.67, with interest. On June 10, 1953, Gooder and his wife assigned the note and trust deed to E. A. Walker.

On September 30, 1953, Walker called at plaintiffs' place of business to collect the first payment due on the note. He had the note with him at the time, and after plaintiff Leroy Connelly had made payment, Walker took the note out of his pocket, handed it to Connelly, and said, "I am going to give you this note, but I am going to come around and collect the payments on it as long as I live." Connelly said, "You mean that if you die that I won't have to make any payments?" And he said "Yes, it is yours, or words to that extent." When Walker gave Connelly the note and told him it would be his when he didn't come after the payments, Connelly replied that he "would be around collecting notes long after that one was paid off." On cross-examination Connelly testified that Walker told him that when he did not come for collections any more, the note was his. After receiving the note from Walker, Connelly put it in his safe and it remained in his possession thereafter until the trial of the instant action. On December 30, 1953, when the second installment on the note was due, Walker again called at Connelly's place of business to collect the money. Mr. Allen, who was employed by Connelly, made out the check and made a notation on it of payment and interest paid. Connelly wondered about the trust deed and asked Walker about it and the note and Walker stated that he would do "whatever was necessary in regard to it." Walker spent about 45 minutes looking around Connelly's shop and left. Before the March payment was due on the note, Connelly made out a check for it and left the check in his office for Walker. However, Walker died on March 12, 1954, and no further payments were made on the note.

The record shows that Connelly was not related to Walker; that he first became acquainted with him in 1937 or 1938; that at that time Connelly was a battery repairman and made a service trip to Walker's place of business in Santa Ana where Walker was operating a feed mill. Connelly went to see Walker two or three times and Walker went to Connelly's shop on two or three occasions. In 1947 Connelly stopped in to see Walker and in 1950 Connelly, together with Mr. H. G. Gooder, who purchased Walker's mill buildings and who was one of the payees on the note involved, visited Walker and Walker gave Connelly some shafting which was being removed from the mill.

The will of Edward Walker was offered in evidence for the purpose of showing that the decedent by his will devised and bequeathed a major portion of his estate to the Odd Fellows Lodge and it was stipulated that the appraised value of Walker's estate was $231,359.89.

The trial court found, among other things, that on September 30, 1953, E. A. Walker transferred the promissory note involved to plaintiffs voluntarily and without consideration, with the intention of making a gift thereof to plaintiffs and reserved to the donor E. A. Walker the right to collect the installment payments of the principal and interest on said promissory note for and during the term of his natural life; that the gift of said promissory note so made by Walker to plaintiffs carried with it the trust deed securing the same; that plaintiffs have been in possession of said note continuously since September 30, 1953, and by reason of the gift thereof from said E. A. Walker, that upon his death said note became fully paid and canceled and that the trust deed securing the same also became canceled. Judgment was entered in accordance with these findings and defendants appeal therefrom.

Appellants argue that there is no substantial evidence to indicate an intent to make a gift and that the reservation of principal and interest on the obligation by the donor amounts to a reservation of such interest in the property, that in actuality the proposed gift does not take effect until the death of the donor and therefore fails. These arguments are not persuasive.

Appellants concede that under the well established rules of appellate practice, the power of a reviewing court, where sufficiency of evidence is attacked, begins and ends with the inquiry whether there is any substantial evidence in support

of the findings and judgment. (*Mead* v. *Smith*, 106 Cal.App.2d 1, 3 [234 P.2d 705].)

In *Crane* v. *Reardon*, 217 Cal. 531 [20 P.2d 49], the court held that a verbal gift of shares of stock may be made by a mere manual delivery without written endorsement. In that case, the donor, in delivering the stock certificate, said: "Take it. It is yours." The court concluded that a valid gift had been made. ■ The court said: "While it has been held that under our statute there cannot be a valid oral gift of a chose in action not evidenced by a writing (*Adams* v. *Merced Stone Co.*, 176 Cal. 415 [178 P. 498, 3 A.L.R. 928]), it is well settled that where the chose in action is evidenced by a written instrument such as a note, bank passbook, bill of exchange, etc., mere manual delivery without written indorsement is sufficient." In the instant case, when Walker handed the note to Connelly and stated that he was going to give him the note and said "Yes, it is yours," there was a valid delivery and gift of the note.

In *Gould* v. *Van Horne*, 43 Cal.App. 145 [187 P. 35], plaintiff brought an action as executor to recover a sum of money alleged to be due from the defendant to the estate of the decedent on his promissory note. The court held that the evidence was sufficient to support the finding of the trial court to the effect that it was the donor's intent to make an absolute gift of the money involved to defendant, and said:

"The plaintiff, upon this appeal, urges three main grounds for a reversal of the case. The first of these is that the facts as shown are insufficient to support the finding of a gift *inter vivos* to the defendant, but at most are merely evidence of an intent on the part of the deceased to make a gift to take effect upon her death. Much of the appellant's argument upon this point is devoted to a discussion of the weight of the evidence, but as to this we think that there was sufficient evidence, if believed by the court, to sustain its finding to the effect that it was the donor's intent to make an absolute gift of the money in question to the defendant. If such was her intention it would not be defeated by the further fact that she required of the defendant that he pay her interest on the sum given during her lifetime, nor even that he give her back some of the principal, if desired." (Citing cases.)

In *Calkins* v. *Equitable B. & L. Assn.*, 126 Cal. 531, 535 [59 P. 30], it was held that the gift and transfer of the stock involved was accomplished by the written assignment and delivery of the stock with the intention to make a gift thereof to plaintiffs, and the fact that the donor reserved to himself the

dividends during his lifetime did not affect the validity of the gift.

In *Lynch* v. *Lynch,* 124 Cal.App. 454, 461 [12 P.2d 741], it was held that a donor may retain custody and control over the subject of the gift where such possession and control relates only to the use and enjoyment thereof and does not vest in the donor any interest or title in the property itself, and that where such custody and control is to be exercised by the donor as agent of the donee, all other essentials of a completed gift existing, the gift is not to be affected or invalidated. It was further held therein that the essentials of a completed gift are (1) competency of the donor to contract, (2) a voluntary intent on the part of the donor to make a gift, (3) delivery, either actual or symbolical, amounting to a transfer of title, (4) acceptance, actual or imputed, (5) a complete divestment of all control by donor, (6) a lack of consideration in return for the gift. We conclude that these essentials of a completed gift were shown in the instant case and that the statements of Walker to the effect that he intended to collect the payments as long as he lived, did not invalidate the gift of the note.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.