[Civ. No. 5878. Fourth Dist. July 7, 1959.]

JOHN ANDREW TURNBULL, as Executor, etc., Appellant, v. HELEN THOMSEN, Respondent.

*Assigned by Chairman of Judicial Council.

Edgar G. Langford and J. Perry Langford for Appellant.

Sullivan & Sullivan for Respondent.

MUSSELL, J.—This is an action by John Andrew Turnbull as executor of the estate of Frank Turnbull, deceased, to impress a trust upon the proceeds of a check in the amount of

$22,217.98 which was received by the decedent on or about February 25, 1957, as the net proceeds of the sale of real estate, endorsed by him and delivered to the defendant Helen Thomsen. It is alleged in the complaint, in substance, that the proceeds of the check were placed in a joint bank account for convenience and were actually the property of the decedent and held for him; that the defendant obtained possession of the check by fraud and undue influence and that a relationship of trust and confidence existed between the decedent and defendant. Defendant alleges that the check was endorsed and delivered to her as a gift and is her property. Judgment was rendered for defendant and plaintiff appeals therefrom.

Decedent, Frank Turnbull, at the time of his death on March 11, 1957, was approximately 74 years of age and for many years had been an alcoholic. In 1949 he was residing in La Jolla, California, and had a small business next door to the Valencia Hotel. He spent considerable time in the coffee shop of this hotel and there became acquainted with defendant Helen Thomsen, who was employed at the hotel. In 1950 Turnbull commenced drinking again and from that time until 1955 was confined to his home much of the time. He also spent some time in a rest home and at the Patton State Hospital. During these years Miss Thomsen loaned him money when he needed it, saw that he had groceries in his home, had prepared food delivered to him, visited him frequently when he was in the state hospital, and looked after small business matters for him. In 1953, Turnbull's larynx was removed and shortly thereafter he broke his hip. In October, 1955, he entered the Naval hospital in San Diego and remained there until January, 1957. During the time he was in the Naval hospital Miss Thomsen visited him almost daily, took care of his affairs for him, brought him food, made purchases for him, and he depended almost entirely upon her for assistance. In January, 1957, he was removed to the Golden Hill Hospital in San Diego, where he remained until he died and again Miss Thomsen was in constant attendance upon him, visited him almost every day and frequently several times a day, brought him his mail from La Jolla, the daily newspaper, magazines, medication, prepared food which he requested, and in every way saw that he wanted for nothing.

Many months prior to the transaction in question Turnbull had announced that he was going to give the real property (which he later sold and for which he received the check involved) to the defendant, or was going to give her the proceeds

of the property upon its sale. These statements were repeated several times. Upon the completion of the sale of the property and receipt of the check involved for the net proceeds, Turnbull endorsed it to Miss Thomsen, delivered it to her, announced that it was a gift and voluntarily called in one of the nurses in the hospital and announced in her presence that he had made a gift of the check to Miss Thomsen. She was reluctant to accept the gift because of the fact it constituted practically the entire assets of the decedent. He insisted upon her taking it and finally suggested that she consult with a Mr. Arthur Welles of the San Diego Trust and Savings Bank. This was done and Mr. Welles suggested that in order that the proceeds of the check be readily available in case Miss Thomsen wished to protect Turnbull in the event of need, that it be placed in a joint account. Welles and Miss Thomsen visited Turnbull and discussed this subject with him. They were told by Turnbull that it was agreeable, whereupon he signed joint tenancy bank account cards, which were delivered to Welles. The joint account was thereafter established in accordance with this agreement.

The trial court found, *inter alia,* that the endorsement and delivery to defendant of the check involved constituted a valid gift of said check and the proceeds thereof; that at the time of the transaction a fiduciary relationship existed between the parties in that defendant stood in a position of trust and confidence to decedent; that defendant fully sustained the burden of establishing that the transactions concerning the gift of the check were in all respects fair and without undue influence or fraud; that the decedent understood the transaction and intended to make the gift; that the gift of the check and its proceeds was a voluntary gift; that the decedent understood the nature of the transactions and desired to make the gift, and that the gift was not the result of any fraud, undue influence or overreaching on the part of the defendant; that it was conceded by the parties upon the trial that the mental capacity of the decedent to be able and competent to make a gift was an issue of the case; that the burden of establishing want of capacity generally was upon the plaintiff and that the plaintiff failed to meet such burden; that the decedent did have mental capacity to make the gift and was competent and capable to understand the transaction and the nature thereof.

Judgment was rendered in favor of defendant and the court decreed that the gift of the check and the proceeds thereof on February 25, 1957, constituted a valid gift and represented

the voluntary and intelligent desire of decedent; that plaintiff is entitled to recover nothing by reason of his complaint. The court also dissolved the preliminary injunction theretofore granted restraining defendant from disbursing, making any disposition or transfer of the funds in the joint bank account.

Appellant does not challenge the sufficiency of the evidence to sustain the findings. He contends, however, that the defendant's uncontradicted evidence establishes that she did not accept the gift. In support of this contention appellant states that it is clear from respondent's testimony that it was her intention that the money should remain under the dominion and control of decedent and that she would not exercise control over it; that such a position is inconsistent with the acceptance of a gift; that such evidence would not support a finding of acceptance and that the trial court made no such finding; and that in the absence of such a finding and evidence to support it, the judgment is unsupported by the findings and must be reversed. We are not in accord with this contention.

Whether a gift is complete and effectual is a question of fact to be determined from all the evidence (24 Cal.Jur.2d, § 17, p. 32). The evidence is sufficient to support the finding of the court that a valid gift was effected. Manual delivery of the check, accompanied by the words of donation, sufficiently support the finding. The inferences drawn from the statements and acts of the parties were reasonable and logical and cannot be disturbed. (*Klindera* v. *Smith*, 15 Cal.App.2d 115 [59 P.2d 156].)

A judgment will not be set aside on appeal because of a failure to make a specific finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made. (*Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593]; 48 Cal.Jur. 2d, sec. 288, p. 290.)

While the trial court did not specifically find that respondent "accepted" the gift, it did find that the check and proceeds thereof was a valid gift and it may be implied therefrom that the check and its proceeds were delivered to and accepted by respondent.

A gift is a transfer of personal property, made voluntarily and without consideration. (Civ. Code, § 1146; 24 Cal. Jur.2d, § 2, p. 5.) In order for a gift to be valid, there must be a complete delivery and transfer of dominion within the donor's lifetime. (24 Cal.Jur.2d, § 5, p. 10.) Acceptance by the donee is an essential element of a completed gift.

784

(24 Cal.Jur.2d, § 31, p. 57.) ▮▮▮ The essential elements of a valid and enforceable gift are a donative intent by the donor, an effectual transfer of title and delivery, and an actual or imputed acceptance by the donee. (24 Cal.Jur.2d, § 17, p. 31.) ▮▮▮ A clear intention on the part of the donor to make a gift is an essential element of a valid gift and it is sufficient if the donor uses words clearly importing an intention to give. In *Estate of Miller*, 143 Cal.App.2d 544, 549 [299 P.2d 1005], it is said:

"The essentials of a valid gift *inter vivos* are competency of the donor to contract; a voluntary intent of the donor to make the gift; delivery, either actual or symbolical, amounting to transfer of title; acceptance, actual or imputed; complete divestment of all control by the donor; and a lack of consideration for return of the gift."

▮▮▮ In the instant case the gift of the check was complete by actual delivery and without power of revocation; decedent reserved no dominion or control over the gift until his death. By endorsing the check and handing it to respondent, decedent completed a presently effective gift and a delivery amounting to a present transfer of title. (*Blonde* v. *Jenkins Estate*, 131 Cal.App.2d 682, 685 [281 P.2d 14].)

Appellant next contends that the trial court erred in excluding evidence of defendant's net income. During cross-examination of respondent, appellant sought to inquire as to her net income for the year 1956. Objection was made on the ground that the evidence was immaterial to the issues and the court sustained the objection. ▮▮▮ Appellant contends that this ruling was erroneous and highly prejudicial since he was attempting to make an offer of proof which would have established false and fraudulent statements made by appellant to decedent. At the time counsel for defendant made the objection no assertion was made by plaintiff's counsel that the purpose of the question was to show fraudulent misrepresentation by defendant. Plaintiff's attorney stated that he was interested in establishing what defendant's business operations had been for several years and now argues that if plaintiff had been permitted to establish that Miss Thomsen's representation that she could not afford a house was false, he would have made out a ground for setting aside the gift. However, the record shows that Miss Thomsen had previously testified on cross-examination concerning her gross income and it does not appear that there was prejudicial error in sustaining the objection to the offered evidence where, as here, both parties

were accorded a fair and impartial trial with adequate latitude in respect to all relevant evidentiary matters. (*Tonnesen* v. *Tonnesen*, 126 Cal.App.2d 132, 136 [271 P.2d 534].)

 Appellant's final contention is that the trial court erred in placing upon plaintiff the burden of proving Frank Turnbull's mental incapacity to make the alleged gift. However, the record shows that the trial court did not impose such burden upon appellant but on the contrary found that a fiduciary relationship existed between the parties; that the decedent did have mental capacity to make the gift and was competent and capable to understand the transaction and nature thereof, thereby implying that the donee (Miss Thomsen) had met the burden of establishing the capacity of the decedent to make the gift. These findings are supported by substantial evidence. The testimony of the donee alone, if satisfactory and believed by the trial court, may sufficiently meet the burden thus cast upon her. (*Axell* v. *Axell*, 114 Cal. App.2d 248 [250 P.2d 182] ; *Estate of Raphael*, 115 Cal.App. 2d 525 [252 P.2d 979].)

Judgment affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied July 29, 1959, and appellant's petition for a hearing by the Supreme Court was denied August 31, 1959.