[Civ. No. 41350. Second Dist., Div. One. Nov. 1, 1973.]

SAM JAFFE et al., Plaintiffs and Appellants, v.
RICHARD CARROLL et al., Defendants and Respondents.

## COUNSEL

Simon, Sheridan, Murphy, Thornton & Medvene, Edward M. Medvene and Michael R. Rogers for Plaintiffs and Appellants.

David G. Licht for Defendants and Respondents.

## OPINION

**HANSON, J.—**

### THE CASE

Plaintiffs Sam and Mildred Jaffe filed a complaint against Richard Carroll and Richard Carroll & Co. on April 8, 1972. The complaint set forth two causes of action; the first cause of action for declaratory relief and the second cause of action apparently seeks relief based on a gift and misrep-

resentation and fraud theory. Both causes of action were based on a letter, a copy of which is attached as "Exhibit A" and incorporated by reference as though fully set forth in the complain, given to plaintiffs by Richard Carroll in 1951. The letter in its entirety is as follows:

"9453 Charleville Boulevard
Beverly Hills, California
May 21, 1951

"Mr. Sam Jaffe
1151 Summit Drive
Beverly Hills, California

"Dear Sam:

"The following shall constitute the formal transfer by me to you and your wife, Mildred, of that certain interest in and to the men's haberdashery business which I own and operate at 9453 Charleville Boulevard, Beverly Hills, California, known as Carroll and Company, as is more specifically set forth hereinafter.

"This transfer is made by me on this, the occasion of your fiftieth birthday, as a tribute to your complete faith in my ability, and as a small token of my esteem for you as a man and, more particularly, as a friend.

"Now, therefore, in consideration of your many acts of kindness, for your love and devotion and for other good and valuable consideration, receipt of which is hereby acknowledged, I hereby set over, assign and convey to you, Sam Jaffe, and your wife, Mildred, in joint tenancy and with the right of survivorship, as long as you or either of you shall live, five (5%) percent of the net profits in and to the aforesaid Carroll and Company, subject to the following contingencies and conditions only:

"1) It being my intent and desire that you two shall personally benefit by this transfer and, knowing your charitable nature and fearing that you may wish to reconvey this interest to me, or otherwise, I hereby make this transfer irrevocable and nontransferrable by either you or your wife, Mildred, except that if it should become necessary, in my opinion, for me to change the legal form of the business to a corporate form or otherwise, this interest which you now have may be converted to that same share in the profits of that future organization, and no such change shall in any way effect [*sic*] your interest in this business or its successor.

"2) I hereby reserve unto myself the sole discretion as to when the said profits shall be distributed, and also the sole discretion as to whether the said profits shall be distributed or returned to the business, these two reser-

vations being necessary in order for me to protect the solvency, growth and general stability of the business.

"3) Net profits shall be defined as that term is used in standard accounting practices, which shall, of course, include the prior payment of taxes.

"Nothing herein contained shall constitute this a partnership or joint venture, nor in any way obligate you or your wife upon any liability or obligation of the said Carroll and Company, either in tort, contract or otherwise, it being my express desire to transfer to you a right to participate in the future profits of a business in which you were so instrumental in establishing and improving.

"If, for any reason, it shall become necessary for me to execute any further documents in order to complete this transfer, I hereby agree to do so as soon as is reasonably practicable.

"Very truly yours,
"RICHARD CARROLL"

Defendants Richard Carroll and Richard Carroll & Co. demurred generally to plaintiffs' complaint on the grounds that the first and second causes of action did not state facts sufficient to constitute a cause of action in that, on the face thereof, each cause of action was barred by the statute of limitations (Code Civ. Proc., § 337) and that each cause of action did not state facts sufficient to constitute a cause of action. Richard Carroll also specially demurred, alleging the complaint was uncertain, ambiguous and unintelligible. Defendant Richard Carroll & Co. generally demurred in a separate pleading to plaintiffs' complaint on the ground the complaint failed to state facts sufficient to constitute a cause of action.

The court sustained both defendants' demurrers to the original complaint as to both causes of action, without leave to amend.

The plaintiffs appeal from this order.

## DISCUSSION

*General*:

The complaint is entitled "Complaint for Declaratory Relief and for Misrepresentation and Fraud." The first cause of action is entitled "Declaratory Relief." The second cause of action has no title but words such as "gift," "nondisclosure . . . with intent to deceive," "induced and lulled," etc. are used. The complaint incorporates by reference as an exhibit a letter dated May 21, 1951, addressed to plaintiff Sam Jaffe, referring to his wife, Mildred, and signed by one of the defendants, Richard Carroll. The letter,

Exhibit "A," unique in content and dating back over 20 years, poses a multitude of questions as to its legal significance, if any. The status of the letter depends upon facts and the pleadings of the plaintiffs.

Even though the plaintiffs labeled their causes of action, that does not mean they are bound by those labels. "It is an elementary principle of modern pleading that the nature and character of a pleading is to be determined from its allegations, regardless of what it may be called, and that the subject matter of an action and issues involved are determined from the facts alleged rather than from the title of the pleadings or the character of the damage recovery suggested in connection with the prayer for relief." (*McDonald* v. *Filice,* 252 Cal.App.2d 613, 622 [60 Cal.Rptr. 832].)

Also, in *Barquis* v. *Merchants Collection Assn.,* 7 Cal.3d 94, at page 103 [101 Cal.Rptr. 745, 496 P.2d 817], the court stated: "[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory. The courts of this state have, of course, long since departed from holding a plaintiff strictly to the 'form of action' he has pleaded and instead have adopted the more flexible approach of examining the facts alleged to determine if a demurrer should be sustained. [Citations.]"

In *Scott* v. *City of Indian Wells,* 6 Cal.3d 541 at pages 549-550 [99 Cal. Rptr. 745, 492 P.2d 1137], the court said: "In determining the sufficiency of a complaint against a general demurrer, we consider the demurrer as admitting all material and issuable facts properly pleaded. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].) Although facts should be averred in 'ordinary and concise language' (Code Civ. Proc., § 426), precise form and language are not essential. '[T]he rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' (*Matteson* v. *Wagoner* (1905) 147 Cal. 739, 742 [82 P. 436].)"

*The First Cause of Action:*

In paragraph 5 of plaintiffs' first cause of action[1] plaintiffs allege that the defendant received $3,500 along with acts of kindness, love and devo-

---

[1]Plaintiffs' labeled first cause of action includes paragraphs 1-16.1.

tion in consideration for the letter that defendant gave plaintiffs on May 21, 1951 and that the letter gave to plaintiffs 5 percent of the net profits of defendant's business.

Paragraph 8 of plaintiffs' first cause of action states that on January 21, 1954, defendant's company was duly incorporated as a California corporation. The pleadings are indefinite as to any relationship between the defendant Richard Carroll and codefendant Richard Carroll & Co. The letter in question, signed by Richard Carroll, stated that "if it should become necessary, in my opinion, for me to change the legal form of the business to a corporate form or otherwise, this interest which you now have may be converted to the same share in the profits of that future organization, and no such change shall in any way effect [*sic*] your interest in this business or its successor."

Paragraph 9 states that the plaintiffs have performed all the conditions and covenants to be performed in the letter of May 21, 1951. Paragraph 10 alleges that defendant Carroll has failed to perform his obligations under the letter.

Paragraph 11 alleges that not until 10 months prior to the date of the filing of the complaint were plaintiffs made aware that the "defendant was refusing to give plaintiffs the distribution of profits in and to the Company as provided for" in the letter.

Paragraphs 12, 13 and 14 allege that defendant never intended to comply with the terms of the letter and that defendant's nondisclosure of his intent "was further made to induce and lull plaintiffs into not inquiring of defendant Richard Carroll as to an accounting of their interest in the net profits in and to the Company."

The first question to arise is whether the letter is a contract and, if so, was a contract pleaded in the first cause of action? Since the pleadings are a means to an end and not an end in themselves, we must determine the status of the pleadings from the facts pleaded rather than from the title or prayer for relief. (*Edwards* v. *Edwards,* 90 Cal.App.2d 33 [202 P.2d 589].)

Section 1549 of the Civil Code defines a contract as an agreement to do or not to do a certain thing. Section 1550 of the Civil Code states that "[i]t is essential to the existence of a contract that there should be: 1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and, 4. A sufficient cause or consideration." In pleading, "[t]he statement of a cause of action for breach of contract requires a pleading of (1) the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's

breach; and (4) damage to plaintiff therefrom." (3 Witkin, Cal. Procedure (2d ed. 1971) p. 2050, citing numerous case authority.)

■ The statutory limitations period for breach of contract commences when the party wronged knows, or reasonably should know of the breach. (*Budd* v. *Nixen,* 6 Cal.3d 195, 203, fn. 6 [98 Cal.Rptr. 849, 491 P.2d 433].) From the pleadings presented it is possible that the statute of limitations may be *tolled* if a contractual relationship existed between the parties.[2] "It is the general rule that a cause of action accrues when a suit may be maintained thereon, and the statute of limitations then begins to run. [Citing cases.]" (*Maguire* v. *Hibernia S. & L. Soc.,* 23 Cal.2d 719, 733 [146 P.2d 673, 151 A.L.R. 1062].) ■ Whether or not the cause of action is barred by the statute of limitations is a question of fact for the trier of fact.

*Second Cause of Action:*

Appellants contend that their second cause of action is based on a gift theory.

California Civil Code section 1146 defines a gift as "a transfer of personal property, made voluntarily, and without consideration." Section 15104 of the Revenue and Taxation Code states that: " 'Transfer' or 'gift' includes the passage by gift of any property, or any interest therein or income therefrom, in possession or enjoyment, present or future, in trust or otherwise, directly or indirectly, or any transfer made with donative intent."

Case law has defined the elements of a gift as follows: (1) competency of the donor to contract; (2) a voluntary intent on the part of the donor to make a gift; (3) delivery, either actual or symbolical; (4) acceptance, actual or imputed; (5) complete divestment of all control by the donor; and (6) lack of consideration for the gift. (*Bank of America* v. *Cottrell,* 201 Cal.App.2d 361, 363 [20 Cal.Rptr. 126]; *Connelly* v. *Bank of America,* 138 Cal.App.2d 303, 307 [291 P.2d 501]; *Lynch* v. *Lynch,* 124 Cal.App. 454, 461 [12 P.2d 741].)

There is nothing in the pleadings or the letter that shows that the donor was not competent; hence, on the face of the pleading, Carroll was com-

---

[2]"Until some conventional right of action has accrued, the statute of limitations does not operate independently to cut off the right to bring one for declaratory relief, and after a 'coercive' right of action has accrued the alternative right to bring an action for the declaratory remedy continues concurrently with the 'coercive' right of action." (*Phillis* v. *City of Santa Barbara,* 229 Cal.App.2d 45 at p. 53 [40 Cal. Rptr. 27], citing *Tostevin* v. *Douglas,* 160 Cal.App.2d 321 at p. 330 [325 P.2d 130].) The contract in this case is the underlying coercive right for declaratory relief, and if the statute had not run, then these parties are entitled to declaratory relief.

petent to contract; the wording of the letter shows that the letter and its contents were voluntarily made with an intent to give it to the plaintiffs; that the letter was delivered to Sam Jaffe;[3] since the plaintiffs are suing on the letter, they undoubtedly accepted its contents; and the letter itself reflects that it was given for past acts and not for any consideration.

An element that apparently presents a question is whether there was complete divestment of all control by the donor. This element has been interpreted as complied with in cases where the alleged gift was delivery of a check which was later put in a joint tenancy bank account between the donor and the recipient (*Turnbull* v. *Thomsen,* 171 Cal.App.2d 779, 782 [341 P.2d 69]); where the donor retains custody and control over the subject of the gift and where that possession and control relate only to the use and enjoyment of the gift and "does not vest in the donor any interest of title in the property itself, and that where such custody nd control is to be exercised by the donor as agent of the donee, all other essentials of a completed gift existing, the gift is not to be affected or invalidated" (*Connelly* v. *Bank of America,* 138 Cal.App.2d 303, 307 [291 P.2d 501], referring to *Lynch* v. *Lynch,* 124 Cal.App. 454 at p. 461 [12 P.2d 741]).

"In *Calkins* v. *Equitable B. & L. Assn.,* 126 Cal. 531, 535 [59 P. 30], it was held that the gift and transfer of the stock involved was accomplished by the written assignment and delivery of the stock with the intention to make a gift thereof to plaintiffs, and the fact that the donor reserved to himself the dividends during his lifetime did not affect the validity of the gift." (*Connelly* v. *Bank of America, supra,* pp. 306-307.)

Where the donor transfers a promissory note to the donee voluntarily and without consideration, with the intention of making a gift and reserves to the donor the right to collect the principal and interest due on the notes through installment payments until his death, the reservation made by the donor does not invalidate the gift. (*Connelly* v. *Bank of America, supra.*)

In *Eklund* v. *Eklund,* 76 Cal.App.2d 389 at page 394 [173 P.2d 50], the court stated: "The closing brief stresses the contention that there was no gift because there was no delivery of the policies. The retention by appellants of the policies is a neutral factor which does not, standing alone, assist either party without evidence concerning the intent of such retention. Ordinarily where a donor exercises custody and control over property, an implied agency arises from the relationship, as appears in this case—'all

---

[3]Plaintiffs' complaint, paragraph 19, clerk's transcript, page 5.

other essentials of a completed gift existing, the gift is not thereby affected or invalidated.' (*Lynch* v. *Lynch,* 124 Cal.App. 454, 461 [12 P.2d 741].)"

However, "[w]hether a gift is complete and effectual is a question of fact to be determined from all the evidence." (*Turnbull* v. *Thomsen,* 171 Cal. App.2d 779, 783 [341 P.2d 69].)

Richard Carroll filed a general demurrer and a special demurrer to plaintiffs' complaint. The court sustained the demurrer without comment on the special demurrer. In *Stowe* v. *Fritzie Hotels, Inc.,* 44 Cal.2d 416, 425 [282 P.2d 890], the court stated: ". . . When a demurrer based upon both general and special grounds is sustained and the order mentions only the general ground, impliedly the ruling was made either without consideration of the special grounds or upon a determination that they are not well taken. If the general demurrer was sustained erroneously, the trial judge should be directed to consider the special grounds." (See also *Briscoe* v. *Reader's Digest Association, Inc.,* 4 Cal.3d 529, 544 [93 Cal.Rptr. 866, 483 P.2d 34].)

### CONCLUSION

While the complaint is hardly a model of precise pleading, a careful reading of the record on appeal in light of the general rule of liberality of pleading compels us to conclude that the complaint can withstand a general demurrer. The facts as to what occurred during the intervening years between the letter (Exhibit A) and the filing of the action by plaintiffs are peculiarly within the knowledge of the parties and are a matter of proof.

The judgment of dismissal as to both causes of action is reversed. The case is remanded to the trial court for consideration of the special demurrer.

Lillie, Acting P. J., and Thompson, J., concurred.