**Michael GATTO; Philip Gatto, Stephanie Gatto, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 91–70613.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1992.

Decided July 26, 1993.

---

Steven J. Cannata, Cannata & Papale, San Francisco, CA, for petitioners-appellants.

Teresa T. Milton, U.S. Dept. of Justice, Tax Div., Washington, DC, for respondent-appellee.

Before: HUG, FLETCHER, and BRUNETTI, Circuit Judges.

HUG, Circuit Judge:

Michael, Philip, and Stephanie Gatto appeal the Tax Court's denial of two income tax deductions which they had claimed for the 1980, 1981 and 1982 tax years: (I) a deduction under 26 U.S.C. § 163 for interest on loans which had been granted to the Gattos by trusts of their own creation, and (II) a deduction under 26 U.S.C. § 174 for research expenditures incurred by certain research and development partnerships in which they were limited partners. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## I.

### THE INTEREST DEDUCTIONS

In December, 1981, Michael Gatto created a trust with the assistance of attorney Dennis DiRicco and irrevocably transferred to the trust a sum of cash as trust corpus. The beneficiaries of the trust were Gatto's niece and nephew. DiRicco served as trustee. The trust followed the pattern of what is commonly referred to as a "Clifford Trust." See Martyr v. Commissioner, 60 T.C.M. (CCH) 1115, 1127 n. 10, 1990 WL 161006 (1990) (discussing Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940)). It provided for distributions of net income and capital gains at least once each year for the benefit of the beneficiaries until termination of the trust. It further provided that the trustee could postpone these distributions for any compelling reason until that reason no longer existed or the beneficiaries reached age eighteen. The trust was to terminate upon the earlier of the expiration of ten years and one month after its creation or the death of the beneficiaries. Upon termination, all corpus and accumulated and undistributed income was to be transferred back to Gatto or his estate.

Once created, Gatto made numerous transfers to the trust, ranging from $2,000 to $10,020. Soon after Gatto made each transfer, DiRicco would return the cash to Gatto in exchange for promissory notes bearing an interest rate of 20 percent.[1] On December 16, 1982, Gatto paid $4,400 of interest due on one such note and deducted the amount on his 1982 income tax return. The Commissioner disallowed Gatto's deduction, and the Tax Court affirmed. See Martyr, 60 T.C.M. (CCH) at 1127–29 (consolidated opinion). Michael Gatto now appeals.

It appears that Philip and Stephanie Gatto created the same kind of trust, borrowed money from the trust in the same manner, claimed the same kind of deduction, and had that deduction disallowed by the Commissioner. The specific facts regarding Philip and Stephanie Gatto, however, were not established by the Tax Court. Unlike Michael Gatto, Philip and Stephanie Gatto entered a stipulation binding themselves to the result on this issue in a related case. The stipulation of March 6, 1988, read in relevant part:

12. With respect to the claimed interest deduction issue for 1980, 1981 and 1982 set forth as adjustment (d) in the statutory note (Exhibit 4–D), the parties agree to be bound by the final decision made on the interest deduction issue in the case of Eddie S. and Janice Fink, Docket No. 21099–86 [95 T.C. 467, 1990 WL 160996].

1. According to the Tax Court, Michael Gatto made the following deposits and withdrawals through January 3, 1984:

| Deposits | | Withdrawals | | |
| --- | --- | --- | --- | --- |
| Date | Amount | Date | | Amount |
| 12/12/81 | $10,020 | 12/14/81 | | $10,000 |
| 12/16/81 | 2,000 | 1/5/82 | | 2,000 |
| 11/15/82 | 10,000 | 11/16/82 | (total) | 10,000 |
| 12/16/82 | 4,400 | 1/5/83 | | 4,400 |
| 12/18/83 | 3,960 | 1/3/84 | | 3,960 |

Martyr, 60 T.C.M. (CCH) at 1127 n. 11.

The Tax Court ruled against the Finks and a number of other taxpayers, affirming the Commissioner's disallowance of interest deductions on loans from trusts of their own creation. *See Alexander v. Commissioner,* 59 T.C.M. (CCH) 121, 138–41, 1990 WL 28030 (1990) (consolidated opinion). A notice of appeal was filed by the Finks, but the appeal, No. 91–70565, was dismissed by this court on January 31, 1992 because the notice was not timely filed. Philip and Stephanie Gatto now seek to appeal the disallowance of their interest deductions by the Commissioner.

### A.

■ We must first address the question of whether Stephanie and Philip Gatto may appeal a decision of the Tax Court to which they bound themselves by written stipulation. We conclude that they may not.

In *Tapper v. Commissioner,* 766 F.2d 401, 403 (9th Cir.1985), we stated that "[g]enerally, a party cannot appeal a judgment entered with its consent." We did recognize, however, "two exceptions to this rule: 1) where the party did not actually consent, or 2) where the court lacked subject matter jurisdiction to enter the judgment." *Id.* The Gattos assert that their situation falls under the first of these exceptions, lack of consent. Their position is that they agreed to be bound by "the facts and argument of *Fink,*" but not surrender their right to appeal. They concede that they consented to the stipulation, but assert that they did so only because the Commissioner's counsel agreed that they would be able to seek appellate review if the Tax Court ultimately ruled against the Finks.

■ We are not persuaded by these arguments. It follows from our decision in *Tapper* that a party implicitly surrenders its right to appeal a civil judgment, on other than jurisdictional grounds, by consenting to be bound by that judgment. An explicit waiver of appeal rights is not necessary. In this case, the stipulation is unambiguous. It binds the Gattos to the Tax Court's decision in *Fink.* The Gattos do not dispute the fact that they consented to the stipulation, nor do they challenge the jurisdiction of the Tax Court to enter a judgment against them.

We conclude, therefore, that they are bound by that judgment.

Additionally, we are unwilling to entertain the Gattos' argument that their consent was conditioned upon the oral assurance of the Commissioner's counsel that they would retain the right to appeal. Because this assertion is raised for the first time on appeal, there are no factual findings regarding its veracity. When the Gattos entered the stipulation, they were represented by counsel. Indeed, it was their lawyer who signed the document. If their consent was conditional, it was the responsibility of their attorney to insure that the written stipulation indicated that fact.

### B.

■ Michael Gatto, in contrast, did not enter into such a stipulation. Consequently, we must decide whether he was entitled to an income deduction under 26 U.S.C. § 163 for interest paid on loans made by the trust that he had created. The Tax Court ruled the deductions improper after concluding that the interest was not incurred on genuine indebtedness, and we agree.

■ Section 163(a) of the Internal Revenue Code provides a deduction for "all interest paid or accrued within the taxable year on indebtedness." 26 U.S.C. § 163(a). "Courts have defined indebtedness to mean an unconditional and legally enforceable obligation...." *Linder v. Commissioner,* 68 T.C. 792, 796, 1977 WL 3613 (1977); *see Howlett v. Commissioner,* 56 T.C. 951, 960, 1971 WL 2506 (1971). We review for clear error the Tax Court's determination that an interest deduction claimed under section 163 was not the result of genuine indebtedness. *See Karme v. Commissioner,* 673 F.2d 1062, 1065 (9th Cir.1982). The taxpayer, moreover, has the burden of establishing entitlement to the deduction. *Id.*

A Tax Court case has considered the deductibility of interest under circumstances similar to those of this case. *Wilken v. Commissioner,* 53 T.C.M. (CCH) 965, 1987 WL 40331 (1987). In *Wilken,* taxpayers transferred money to a trust they had created, immediately borrowed the money back in

return for written obligations, and claimed deductions for interest paid on those obligations. The court looked beyond the form of the transactions and found that the taxpayers had, in essence, given the trusts nothing more than promises to pay money, which were themselves unenforceable. The court concluded, therefore, that the interest deductions had not been incurred on genuine indebtedness and denied them.

In order to assess the enforceability of obligations, courts refer to the law of the state in which the transaction occurred. *Linder*, 68 T.C. at 796. In California, the state in which these transactions occurred,

> a gift of the donor's own note is not enforceable by the donee against the donor or his estate, in the absence of an estoppel, for the reason that it only amounts to a promise to make a gift in the future, and is no more enforceable than any other promise to make a gift.

*Coon v. Shry*, 209 Cal. 612, 289 P. 815, 816 (1930). *See also Herbert v. Lankershim*, 9 Cal.2d 409, 71 P.2d 220, 254 (1937); *In re McConnell's Estate*, 6 Cal.2d 493, 58 P.2d 639, 640 (1936); *Tracy v. Alvord*, 118 Cal. 654, 50 P. 757, 757 (1897).

The Tax Court found that Michael Gatto's transactions were similar to those at issue in *Wilken.* Viewing each donation of money to the trust and each subsequent "loan" of the money back to Gatto as an integrated transaction, the Tax Court reasoned that Gatto had in essence donated to the trust a promise to make a gift of money in the future. Because such a promise is unenforceable under California law, the Tax Court concluded that Gatto had not incurred genuine indebtedness and ruled his interest deduction improper.

Michael Gatto does not dispute the Tax Court's underlying factual conclusions, but instead urges us to look at the form of the transactions and treat them as independent events: (1) the irrevocable gift of money to a trust and (2) the loan of money in exchange for interest. In support of his position, Gatto cites a California case which enunciates the requirements of a completed gift and argues that his contributions to the trust satisfied these requirements. *See Connelly v. Bank of America*, 138 Cal.App.2d 303, 291 P.2d 501

(1956). He also cites a California case standing for the proposition that the actual delivery of a check establishes a valid gift. *See Turnbull v. Thomsen*, 171 Cal.App.2d 779, 341 P.2d 69 (1959). Neither of these authorities, however, bears upon the Tax Court's ability to look at the substance of Gatto's transactions and characterize them for federal tax purposes as gratuitous promises to pay money. Accordingly, we find that the Tax Court's conclusions were not clearly erroneous.

II.

## THE RESEARCH AND DEVELOPMENT DEDUCTIONS

Between 1980 and 1982, appellants invested in a number of limited partnerships whose stated purpose was the development and exploitation of various new technologies. Subsequent to their investments, appellants claimed income tax deductions under 26 U.S.C. § 174(a)(1) for a distributive share of the research and experimentation expenses incurred by each of the partnerships. The Commissioner disallowed the deductions, contending that the partnerships had not incurred their research expenditures in connection with an existing or prospective business of their own, as required by the statute. *See* 26 U.S.C. § 174(a)(1); *Snow v. Commissioner*, 416 U.S. 500, 94 S.Ct. 1876, 40 L.Ed.2d 336 (1974). Rather than developing or marketing the technologies themselves, each of the partnerships contracted a research firm to develop a specified technology and granted a marketing firm the right to obtain a nominally-priced option for an exclusive license to exploit the technology on behalf of the partnership. Based on these circumstances, the Tax Court affirmed the Commissioner's action. This appeal followed.

■ The disposition of this issue is controlled by our recent decision in *Kantor v. Commissioner*, 998 F.2d 1514 (9th Cir.1993). In *Kantor*, we denied the section 174 deduction to investors in a limited partnership which similarly contracted an independent research firm to develop a new technology and granted that firm the effective right to

obtain exclusive exploitation rights to the technology for a nominal price. *Id.* Under these circumstances, we held it reasonable for the Tax Court to conclude that the partnership had no realistic prospect of engaging in its own business, in connection with the fruits of the research. *Id.* We found that by entering these agreements the partnership had evinced the objective intent to remain, and rendered itself incapable of ever becoming, anything but a passive investor in a business conducted by the research firm. *Id.* Under virtually identical facts, the Tax Court came to the same conclusions in this case. Accordingly, we affirm.

Appellants contend, as did the appellants in *Kantor,* that the involvement of the general partners in the development and marketing of the technologies was sufficiently regular and substantial to establish the partnerships as businesses and thereby satisfy section 174. The Tax Court properly rejected this argument. The Tax Court found that "[a]ny involvement by the general partners was either insignificant or was directed at investment management." *Martyr,* 60 T.C.M. (CCH) at 1125. It based its conclusion upon the factual premise that "[n]one of the general partners ... had any significant training or experience in the technological or marketing aspects of [the subject technologies]." *Id.* We are satisfied that the Tax Court's factual premise was adequately supported by the record and that its conclusion was based on sound legal reasoning.

*AFFIRMED.*