79 F.3d 769
 96 Cal. Daily Op. Serv. 1414, 96 Daily Journal
D.A.R. 2423
UNITED STATES of America, Plaintiff-Appellee,
v.
Francisco ALCARAZ-GARCIA, Defendant,
v.
Raul D. COVARRUBIAS; Daniel Haro; Javier Aguirre,
Third-party-defendants-Appellants.
 No. 95-50155.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Jan. 10, 1996*.
Decided March 4, 1996.
 
 Appeal from the United States District Court for the Southern District of California; Howard B. Turrentine, Senior District Judge, Presiding.
 Stephen E. Hoffman, Frank & Milchen, San Diego, California, for third-party-defendants-appellants.
 L.J. O'Neale, Assistant United States Attorney, San Diego, California, for plaintiff-appellee.
 Before: BRIGHT,** SKOPIL, and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Raul D. Covarrubias, David Haro and Javier R. Aguirre ("Appellants") appeal the district court's denial of their third party petition to amend an order of forfeiture imposed under 18 U.S.C. § 982(a). The criminal forfeiture arose from the defendant Francisco Alcaraz-Garcia's ("Alcaraz") failure to report that he was carrying $35,020 in cash when crossing the border. In their petition, Appellants claimed ownership of a portion of the $25,020 that was forfeited, alleging they had each given sums of money to Alcaraz to deliver to their families in Colima, Mexico. After a hearing, the district court denied their petition, finding that the Appellants failed to establish their ownership interest in the forfeited funds under California law.
 
 
 2
 We have jurisdiction under 28 U.S.C. § 1291 and, for the following reasons, we REVERSE the district court's denial of the third party petition and REMAND to the district court for an appropriate amendment of the forfeiture order.
 
 I.
 
 3
 On June 22, 1994, while driving from Southern California to the airport in Tijuana, Mexico, Alcaraz was stopped at the Otay Mesa, California Port of Entry. In response to questioning during primary and secondary customs inspections, Alcaraz told two inspectors of the United States Customs Service and an officer of the Chula Vista Police Department that he was not carrying more than $10,000 in cash. After a search by a customs inspector, $35,020 in U.S. currency was found concealed in Alcaraz' boots.
 
 
 4
 Based on the above conduct, Alcaraz was convicted in a jury trial of failing to file a currency report in violation of 31 U.S.C. § 5324(b)(1) and making a false statement to a U.S. Customs Service Inspector in violation of 18 U.S.C. § 1001. After further argument and deliberation, the jury ordered the criminal forfeiture of $25,020 pursuant to 18 U.S.C. § 982.
 
 
 5
 Appellants filed a timely third party petition in the district court under 21 U.S.C. § 853(n)(2), alleging ownership of the forfeited funds. Appellants stated in their petition that they and Alcaraz were from Colima, Mexico. They had immigrated legally to the United States in order to find gainful employment and assist their families. When Appellants learned that Alcaraz planned to travel to Colima to visit family and friends, Appellants asked Alcaraz to deliver various sums from their savings to their respective families in Colima.[1] Thus, Appellants claimed that forfeiture of the funds in Alcaraz' possession was improper because Appellants were innocent owners of the funds.[2]
 
 
 6
 The district court granted Appellants a hearing pursuant to 21 U.S.C. § 853(n)(4). At the hearing, counsel for Appellants declined to present further evidence, relying on the facts presented in the petition. The district court denied the petition at the hearing and issued an order denying the third party claim on February 15, 1995. The court found that under California law, Alcaraz was a gratuitous bailee; therefore, the Appellants' gifts to their relatives were complete upon delivery of the funds to Alcaraz. Alternatively, the court found that if Alcaraz were the agent of the Appellants, their right to the funds would not be superior to Alcaraz' right. Therefore, the court concluded that the petition failed to show by a preponderance of the evidence that Appellants had a legal right, title or interest in the forfeited funds within the meaning of 21 U.S.C. § 853(n)(6)(A).[3]
 
 
 7
 Covarrubias, Haro and Aguirre appeal the district court's denial of their third party petition.
 
 II.
 A. STANDARD OF REVIEW
 
 8
 We review the district court's interpretation of federal forfeiture law de novo. United States v. 1980 Lear Jet, Model 35A Serial No. 277, 38 F.3d 398, 400 (9th Cir.1994). However, we review the district court's findings of fact for clear error. See United States v. One Parcel of Land, Known as Lot 111-B, Tax Map Key 4-4-03-71(4), Waipouli, Kapaa, Island and County of Kauai, State of Hawaii, 902 F.2d 1443, 1445 (9th Cir.1990) (finding of nominal ownership in forfeiture action not clearly erroneous).[4]B. DID THE DISTRICT COURT ERR IN DENYING THE APPELLANTS' THIRD PARTY PETITION?
 
 
 9
 As a preliminary matter, we note that Appellants' primary argument on appeal is misplaced. Appellants contend that the district court erred in denying their third party petition because their petition demonstrates that they were "innocent owners" of the funds seized from Alcaraz under Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).[5] However, for the following reasons, the "innocent owner defense" as formulated by Calero-Toledo is not available under the forfeiture statute at issue here.
 
 
 10
 First, Appellants rely solely on cases that discuss the innocent owner defense under 18 U.S.C. § 981(a)(2), rather than § 982(a)--the forfeiture statute at issue here.[6] The reasoning of these cases is inapplicable to the case at bar because it is dependent upon the language of § 981--which differs significantly from the relevant language of § 982(a) and § 853(n). See infra, pp. 773-774.[7] More importantly, the "innocent owner defense" as formulated by Calero-Toledo does not apply where the forfeiture statute at issue supplies its own requirements to enable an innocent owner to challenge the forfeiture. See $69,292.00 in U.S. Currency, 62 F.3d at 1165 & n. 3 (noting that Calero-Toledo applies where an innocent owner provision does not exist in a forfeiture statute while applying Calero-Toledo to a forfeiture under 31 U.S.C. § 5317(c)). Here, 18 U.S.C. § 982(b) incorporates specified forfeiture procedures contained in 21 U.S.C. § 853, including an innocent owner provision which permits a third party to petition to amend a forfeiture order by establishing certain legal interests in the property. See infra pp. 773-774. Consequently, Appellants must satisfy the requirements of the innocent owner exception explicitly provided by § 853(n), rather than the relying upon the Calero-Toledo formulation of the innocent owner exception.[8]
 
 
 11
 1. Standard for Third Party Petition to Amend a Forfeiture Order.
 
 
 12
 Thus, we turn to the appropriate standard for a third party to petition to amend a forfeiture order under 18 U.S.C. § 982(a). Alcaraz was convicted of failing to file a currency report in violation of 31 U.S.C. § 5324(b)(1), one of the enumerated offenses in 18 U.S.C. § 982(a)(1); therefore, the property involved in the offense was subject to criminal forfeiture under § 982(a)(1) as part of his sentence. 18 U.S.C. § 982(a)(1). The proceedings relating to property forfeited under § 982 are governed by 21 U.S.C. §§ 853(c) and (e) through (p). 18 U.S.C. § 982(b)(1)(A). Under 21 U.S.C. § 853(n)(2), "any person ... asserting a legal interest in property which has been ordered forfeited to the United States" may petition the court for a hearing to adjudicate his or her alleged interest in the property. 21 U.S.C. § 853(n)(2).
 
 
 13
 Further, in order to obtain an amendment to the forfeiture order, the third party petitioner must establish by a preponderance of the evidence that:
 
 
 14
 (A) the Petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the Petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section.
 
 21 U.S.C. § 853(n)(6)(A).[9]
 
 15
 In sum, Appellants had the burden below to show by a preponderance of the evidence that they had a "legal interest" in the forfeited property which (1) was vested in the Appellants rather than Alcaraz or (2) was superior to Alcaraz' interest in the property.
 
 
 16
 2. Appellants' Asserted Legal Interest.
 
 
 17
 Under 21 U.S.C. § 853(n)(6) the "legal right, title or interest" of the third party is determined by state law. United States v. Certain Real Property Located at 2525 Leroy Lane, West Bloomfield, Mich., 910 F.2d 343, 347-48 (6th Cir.1990) (concluding that the use of state law to determine property rights under § 853(n) does not contravene federal forfeiture scheme), cert. denied, 499 U.S. 947, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991); United States v. Ben-Hur, 20 F.3d 313, 317 (7th Cir.1994) (state law determines legal interest of claimant under § 853(n)); see also United States v. Ranch Located in Young, Ariz., 50 F.3d 630, 632 (9th Cir.1995) ("In drug forfeiture actions, ownership of property is determined by state law.").
 
 
 18
 Here, Appellants must look to California law to support their claimed ownership interest in the money. Based upon the allegations in the petition, the district court found that Alcaraz was a gratuitous bailee of Appellants. The court further held that under California law Appellants' gift to their families was complete--and their ownership interest eliminated--once the funds were given to Alcaraz for delivery to Appellants' families.
 
 
 19
 Appellants do not specifically challenge the district court's findings; nor do they cite any California law to support their claim of ownership in the funds once they gave the funds to Alcaraz.[10] Nevertheless, we consider Appellants' claim of ownership to be sufficient to challenge the district court's finding that Appellants no longer had an ownership interest under California law and, for the following reasons, we conclude the district court erred in so holding.
 
 
 20
 First, in the January 31, 1995 hearing on the third party petition, Appellants conceded that Alcaraz was a "gratuitous bailee" under California law, rather than their agent.[11] No one disputes this finding on appeal. Ordinarily, a bailment does not alter the bailor's title interest in the bailed property; 9 Cal.Jur.Bailments § 11 (1993); moreover, a bailor may assert title against any third person to whom the property has been transferred. Id.; Calva Products v. Security Pac. Nat'l Bank, 111 Cal.App.3d 409, 418, 168 Cal.Rptr. 582 (1980) ("[A] bailor's title to goods takes priority over any claim of a purchaser or encumbrancer from the bailee, whether or not the purchaser or encumbrancer was aware of the prior claim at the time of the transaction."). In addition, a bailment can be terminated at any time by the bailor or bailee. 9 Cal.Jur.Bailments § 5; Todd v. Dow, 19 Cal.App.4th at 260-61, 23 Cal.Rptr.2d 490 (bailees are required to deliver property on demand). Thus, after delivery of the funds to Alcaraz, the Appellants retained title to the funds, had the right to assert title against any person to whom the funds were transferred and had the right to terminate the bailment.
 
 
 21
 Second, in California, a gift is "a transfer of personal property, made voluntarily, and without consideration." Cal.Civ.Code § 1146. The elements of a gift are: (1) competency of the donor to contract; (2) a voluntary intent on the part of the donor to make a gift; (3) delivery, either actual or symbolic; (4) acceptance, actual or imputed; (5) complete divestment of control by the donor; and (6) lack of consideration for the gift. Jaffe v. Carroll, 35 Cal.App.3d 53, 59, 110 Cal.Rptr. 435 (1973); Turnbull v. Thomsen, 171 Cal.App.2d 779, 783, 341 P.2d 69 (1959); see also 4 Witkin, Personal Property, § 100.
 
 
 22
 Here, the only elements at issue are delivery of the gift and complete divestment of control by the donor.[12] Appellants claim they delivered the funds to Alcaraz, who was to deliver the funds to the Appellants' families as a personal favor. Under California law, the delivery of a gift is complete when a donor delivers the gift to a third person acting on behalf of the donee, and if the donor parts with dominion and control over the gift. Berl v. Rosenberg, 169 Cal.App.2d 125, 130-31, 336 P.2d 975 (1959); see also Jean v. Jean, 207 Cal. 115, 277 P. 313 (1929) (delivery of stock certificates to son of donors to hold for all children until parents' death constituted delivery); Turnbull, 171 Cal.App.2d at 784, 341 P.2d 69 (delivery of check to third party to deliver to donee effective where donor reserved no dominion or control over gift); 4 Witkin, Personal Property, § 105.[13]
 
 
 23
 Here, although Appellants made no specific claim in their petition that they retained dominion or control over the money once they gave it to Alcaraz to deliver to their respective families, under the law governing bailments, Appellants could have reclaimed their property and terminated their bailment at any time. Moreover, Appellants--as bailors--never lost their title interest in the property that was entrusted to Alcaraz. Lastly, as a bailee, Alcaraz was not acting on behalf of the donees, but rather on behalf of the donors; therefore, under California law the delivery of the gift to Alcaraz is not sufficient to constitute delivery to the donees.
 
 
 24
 For the foregoing reasons, the district court erred in holding that under California law the gift to Appellants' families was complete upon delivery of the funds to Alcaraz. Moreover, because the gift was incomplete, Appellants retained legal title to the bailed funds as the bailors. Thus, Appellants were entitled to assert their ownership interest in the funds and obtain an amendment to the forfeiture order under § 853(n).
 
 
 25
 Finally, we note that the order of forfeiture only required the forfeiture of $25,020 of the $35,020 that Alcaraz was carrying. The Appellants entrusted Alcaraz with a total sum of $26,500--Alcaraz owned the remaining $8,520. Thus, it is unclear to what extent the funds forfeited were Alcaraz' and to what extent they were Appellants. The district court should determine upon remand (in a hearing, if necessary) what portion of the forfeited funds were owned by the Appellants, rather than Alcaraz, and amend the order of forfeiture so that it only encompasses the forfeiture of those funds owned by Alcaraz.[14]
 
 III.
 
 26
 For the foregoing reasons, we hold that under California law, Appellants maintained their title interest in the funds after the funds were entrusted to Alcaraz. Therefore, we REVERSE the district court's denial of Appellants' third party petition and REMAND to the district court to amend the order of forfeiture pursuant to this opinion.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Hon. Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Covarrubias, Haro and Aguirre claim they entrusted Alcaraz with $9,500, $8,500 and $8,500 respectively
 
 
 [2]
 Appellants also claimed the forfeiture violated the Excessive Fines Clause of the Eighth Amendment
 
 
 [3]
 The court did not explicitly rule on Appellants' Excessive Fines Clause challenge
 
 
 [4]
 There is some question concerning the timeliness of this appeal. The district court order denying the third party petition was filed February 15, 1995. The final order of forfeiture was filed March 7, 1995 and entered on March 21, 1995. The Notice of Appeal was filed March 30, 1995. Appellants assert that they are appealing from the final order of forfeiture, and thus their appeal is timely under Fed.R.App.P. 4(b)
 We believe, however, that the government is correct in stating that Appellants are in fact appealing the order denying the third party petition filed on February 15, 1995--not the final order of forfeiture. See United States v. Lavin, 942 F.2d 177, 181 (3d Cir.1991) (appeal taken from order denying third party petition under § 853(n)). Thus, under Rule 4(b) the appeal would be untimely.
 However, we will follow the Third Circuit's approach to the timeliness of appeal of a third party petition to amend a forfeiture order and hold that the third party proceeding is civil in nature. Id. at 181-82; see also United States v. Douglas, 55 F.3d 584, 588 (11th Cir.1995) (Section 853(n) proceeding is civil within the meaning of the EAJA). Therefore, Rule 4(a)(1) applies and this appeal is timely because it was filed within 60 days of entry of the order denying the third party petition. Lavin, 942 F.2d at 181-82; Fed.R.App.P. 4(a)(1).
 
 
 [5]
 Appellants thus argue that their petition established (1) their ownership interest in the property, (2) their lack of knowledge and consent to the illegal use of the property and (3) that they took all reasonable steps to prevent the proscribed use. See United States v. $69,292.00 in U.S. Currency, 62 F.3d 1161, 1165 (9th Cir.1995)
 
 
 [6]
 Appellants erroneously state that the forfeiture statute relied upon in this case was 18 U.S.C. § 981(a), the civil forfeiture statute that applies upon conviction under 31 U.S.C. §§ 5313 or 5324 or 18 U.S.C. §§ 1956 or 1957
 
 
 [7]
 Section 981(a) states in part, "[n]o property shall be forfeited under this section to the extent of the interest of an owner or lienholder by reason of any act or omission established by that owner or lienholder to have been committed with the knowledge of that owner or lienholder." 18 U.S.C. § 981(a)(2)
 
 
 [8]
 No case under 18 U.S.C. § 982(a) or 21 U.S.C. § 853(n) has adopted an innocent owner exception in addition to the statutory provision provided. See United States v. Jimerson, 5 F.3d 1453, 1455 (11th Cir.1993) (rejecting innocent owner defense that failed to meet the requirements of § 853(n)). The courts that have interpreted 21 U.S.C. § 853(n) rely exclusively on the language of § 853(n)(6)(A) and (B) when discussing the standard a third party petitioner must meet in order to amend a forfeiture order. See, e.g., United States v. Campos, 859 F.2d 1233, 1235 & n. 3 (6th Cir.1988); United States v. Reckmeyer, 836 F.2d 200, 204 (4th Cir.1987); see also United States v. $20,193.39 U.S. Currency, 16 F.3d 344, 346 (9th Cir.1994) (noting in dicta that § 853(n)(6) "protects two categories of petitioners: those who have a legal interest in the property that is superior to the defendant's interest at the time of the commission of the acts giving rise to the forfeiture; and 'bona fide purchasers for value' who purchase without knowledge of the forfeitability of the defendant's assets.")
 
 
 [9]
 A petitioner can also demonstrate that he or she is a bona fide purchaser for value under § 853(n)(6)(B)
 
 
 [10]
 Instead, Appellants argue that simply alleging an ownership interest is sufficient to give them standing to challenge the forfeiture under § 853(n). Although true, see, e.g., United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1057-58 (9th Cir.1994) (the assertion of a possessory interest in seized currency is sufficient to have standing to challenge a forfeiture), Appellants confuse standing to challenge the forfeiture with meeting their burden of proof under § 853(n)(6)
 
 
 [11]
 A bailment is the deposit of personal property with another, usually for a particular purpose. 4 Witkin, Summary of Cal. Law, Personal Property, § 129 (9th Ed.1987); Windeler v. Scheers Jewelers, 8 Cal.App.3d 844, 850, 88 Cal.Rptr. 39 (1970) ("A bailment is generally defined as 'the delivery of a thing to another for some special object or purpose on a contract, express or implied, to conform to the objects or purposes of the delivery which may be as various as the transactions of men.' ") (citations omitted); Niiya v. Goto, 181 Cal.App.2d 682, 687, 5 Cal.Rptr. 642 (1960) (same). A gratuitous bailment arises if the bailment is either involuntary or as a personal favor. See Cal.Civ.Code § 1844 ("Gratuitous deposit is a deposit for which the depositary receives no consideration beyond the mere possession of the thing deposited."); Cal.Civ.Code § 1845 ("An involuntary deposit is gratuitous."); 4 Witkin, Personal Property, § 136; see also Todd v. Dow, 19 Cal.App.4th 253, 260-61, 23 Cal.Rptr.2d 490 (1993) (storage of rifle as a personal favor was a gratuitous bailment); Greenberg Bros., Inc. v. Ernest W. Hahn, Inc., 246 Cal.App.2d 529, 530-31, 54 Cal.Rptr. 770 (1966) (bailment is not gratuitous where bailee received consideration)
 
 
 [12]
 Appellants had the capacity to contract. They allege their intent to make the gift; they do not allege any consideration for the gift. Moreover, acceptance of a beneficial gift, such as money, is presumed. In re Kalt's Estate, 16 Cal.2d 807, 108 P.2d 401 (1940); Kropp v. Sterling Sav. & Loan Ass'n., 9 Cal.App.3d 1033, 1046, 88 Cal.Rptr. 878 (1970); 4 Witkin, Personal Property, § 107
 
 
 [13]
 In order to constitute an effectual delivery, the donor must not only have parted with the possession of the property, but he must also have relinquished to the donee all present and future dominion and control over it, beyond any power on his part to recall. The surrender must be so full and complete that, if the donor resumes control over the property without the consent of the donee, he will be answerable in damages as a trespasser. The retaining of control in the hands of the donor over the subject of the gift, or the reservation by the donor of any right to retake the property or appropriate it to other purposes, avoids the gift
 Lefrooth v. Prentice, 202 Cal. 215, 223-24, 259 P. 947 (1927) (holding that where donor deposited bonds in donor's safety deposit box with instructions to the Trust Company to deliver interest to the accounts of his children and where donor sent to each child a memorandum stating that the deposit was on his or her behalf, the donor did not relinquish control over the bonds and thus no gift was effectuated) (internal quotations omitted).
 
 
 [14]
 Because we reverse the district court on this basis, we need not reach Appellants' Excessive Fines Clause challenge to the forfeiture