**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee*,

                    v.

ROBERTO HERNANDEZ-
ESCOBAR,
         *Movant-Appellant*,

ROBERTO HERNANDEZ,
                    *Defendant.*

No. 17-50134

D.C. No.
3:15-cr-01826-JM-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, Senior District Judge, Presiding

Argued and Submitted July 12, 2018
Pasadena, California

Filed December 20, 2018

Before:  Marsha S. Berzon, D. Michael Fisher,[*]
and Paul J. Watford, Circuit Judges.

Opinion by Judge Fisher

## SUMMARY[**]

### Forfeiture

The panel affirmed the district court's order denying Roberto Hernandez-Escobar's petition under 21 U.S.C. § 853(n) to set aside an order forfeiting $73,000 in cash in connection with Hernandez-Escobar's son's guilty plea to drug crimes, and the district court's denial of Hernandez-Escobar's motion for relief from the order denying the petition.

Hernandez-Escobar argued that he is a bailor whose title to the cash is superior to the Government's. Explaining that the district court did not need to determine whether Hernandez-Escobar had actually given cash to his son or how much, the panel held that the evidence as a whole supports the district court's finding that the cash found in the son's bedroom was proceeds from the son's narcotics trafficking. The panel rejected Hernandez-Escobar's contention that the Government violated his due process rights by interfering with his ability to call his son as a

---

[*] The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

witness.  The panel held that even if Hernandez-Escobar was entitled to due process protections in forfeiture proceedings coextensive with those afforded to criminal defendants, the Assistant U.S. Attorney's communications with the son were mere warnings of the consequences of perjury that did not violate due process.

## COUNSEL

Richard Mark Barnett (argued), San Diego, California; Devin Burstein (argued), Warren & Burstein, San Diego, California; for Movant-Appellant.

Ajay Krishnamurthy (argued), Assistant United States Attorney; Helen H. Hong, Chief, Appellate Section, Criminal Division; Adam L. Braverman, United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## OPINION

FISHER, Circuit Judge:

Roberto Hernandez pled guilty to drug crimes and forfeited $73,000 in cash to the Government. His father, who claims ownership of the cash, petitioned the District Court to set aside the forfeiture order. The court denied the petition after holding an evidentiary hearing, and also denied the father's motion for relief from judgment. The father now appeals. He argues that he is a bailor whose title to the cash is superior to the Government's, and also that his due process rights were violated because his son did not testify at the hearing. We affirm.

## I. Background

Federal agents executed a search warrant at the home of Roberto Hernandez. In his bedroom, they found cash, guns, more than six kilograms (thirteen pounds) of methamphetamine, and "pay-owe" sheets, i.e., the ledgers associated with a drug distribution enterprise. Roberto and his girlfriend told agents that $2,400 in his girlfriend's nightstand belonged to her, but they asserted nothing about the ownership of the remaining $73,390. Roberto later pled guilty to charges arising from methamphetamine trafficking. He signed both a plea agreement and a forfeiture agreement, which stated that he "is the owner of the $73,390," that "it represents property constituting and derived from proceeds he obtained directly from narcotics trafficking," and that he "understands and agrees that it is subject to forfeiture to the United States" under 21 U.S.C. § 853(a)(1). Under the terms of the forfeiture agreement, Roberto agreed "not to contest or to assist any other person or entity in contesting the forfeiture of the property[] seized."

The District Court entered a forfeiture order, and Roberto's father, Roberto Hernandez-Escobar, filed a petition under 21 U.S.C. § 853(n) asserting ownership of the cash.[1] The Assistant U.S. Attorney (AUSA) then interviewed Roberto. Roberto met with his attorney, Ricardo Gonzalez, before the interview. Gonzalez advised Roberto that if he said anything about the cash that contradicted the plea agreement, he might violate the agreement.

In the interview with the AUSA, Roberto stated that the money was his father's and that he knew his father would

---

[1] For clarity, we refer to the son as "Roberto" and the father as "Mr. Hernandez."

contest the forfeiture. Over the course of a year, whenever his father got a paycheck, he would give Roberto some cash. Roberto's mother and father were not getting along, and Roberto and his father feared that his mother would take the money if Mr. Hernandez continued to keep it in his home. Roberto claimed that when the cash was seized, he didn't say anything about who owned it because he had been "smoking for a few days" and wasn't in the right "mind set." He told the officers about the $2,400 that belonged to his girlfriend only because she reminded him. Finally, Roberto told the AUSA that he would not contest the seizure of the cash, but added that he had no control over his father's actions.

Also during the interview, the AUSA "told [Roberto] he had an obligation to tell the truth and that any lie" could lead to criminal liability for "making a false statement." The AUSA said he believed that Roberto was lying, and pointed out that Roberto's interview statements differed from what he had said in his plea agreement.

The District Court held a two-day hearing without a jury to hear evidence and argument on Mr. Hernandez's petition. Roberto was present at the courthouse, but he invoked his Fifth Amendment right against self-incrimination and did not testify.

Mr. Hernandez did testify. In some respects, his testimony matched his son's statements in the interview with the AUSA. In other respects, the father's and son's stories diverged. Mr. Hernandez testified that over the course of seventeen years, he saved money by putting away a portion of each of his paychecks in cash. He also withdrew money from his retirement account and received income from the sale of a home. Mr. Hernandez hid the cash, which at its highest point totaled more than $76,000, in shoe boxes under the bed he shared with his wife. Mr. Hernandez began

experiencing marital difficulties a few years before the events at issue in this appeal and became concerned that his wife would take the cash. So, a few thousand dollars at a time, he gave the cash to Roberto for safekeeping. He did not keep any records, but he testified that he gave Roberto a total of $76,000. Mr. Hernandez did not know where his son kept the cash.

The District Court considered the evidence presented at the hearing and denied Mr. Hernandez's petition, concluding that he did not establish that the seized cash was his. Instead, the evidence showed that the cash "constituted proceeds from [Roberto's] narcotics trafficking and, thus, was properly subject to forfeiture."

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction under 21 U.S.C. § 853(l). We have appellate jurisdiction under 28 U.S.C. § 1291. "We review the district court's interpretation of federal forfeiture law *de novo*. However, we review the district court's findings of fact for clear error." *United States v. Alcaraz-Garcia*, 79 F.3d 769, 772 (9th Cir. 1996) (citation omitted). We review a ruling on a Rule 60(b) motion for relief from judgment for abuse of discretion. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

## III.  Analysis

The federal criminal forfeiture statute provides that a person convicted of a drug offense "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." 21 U.S.C. § 853(a); *see also United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005) ("At sentencing, the district court must order forfeiture of the

property in addition to imposing any other sentence."). Although the property is not forfeited until after conviction, "[a]ll right, title, and interest in [the] property . . . vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c).

Because § 853 "acts *in personam*, it permits the forfeiture of the defendant's interests only, not the property of innocent parties." *Nava*, 404 F.3d at 1124. Section 853 allows a petitioner like Mr. Hernandez to request a non-jury hearing "to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). "[T]he petitioner may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses who appear at the hearing." *Id.* § 853(n)(5).

The petitioner prevails if he "establishe[s] by a preponderance of the evidence" that he has "a legal right, title, or interest in the property" that "was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property." *Id.* § 853(n)(6). "[S]tate law determines whether [the petitioner has] a property interest, but federal law determines whether or not that interest can be forfeited." *Nava*, 404 F.3d at 1127 (quoting *United States v. Hooper*, 229 F.3d 818, 820 (9th Cir. 2000)).

A.  Denial of Petition to Set Aside Forfeiture Order

Mr. Hernandez argues that he is the bailor of the cash, and that the District Court therefore erred in denying his petition to set aside the forfeiture order. Under California law, "[a] bailment is the deposit of personal property with another, usually for a particular purpose." *Alcaraz-Garcia*, 79 F.3d at 774 n.11. "[A] bailment does not alter the bailor's title interest in the bailed property," and "a bailor may assert

title against any third person to whom the property has been transferred." *Id.* at 775 (citation omitted). Mr. Hernandez's legal arguments about bailments are cogent, as far as they go. His petition fails for factual reasons, not legal ones.

The District Court concluded that Mr. Hernandez "failed to meet his burden of establishing by a preponderance of the evidence that . . . he held any interest in the cash that was superior to [Roberto's]." Instead, the court ruled, the evidence "establishe[d], beyond any reasonable doubt," that the cash "constituted proceeds from [Roberto's] narcotics trafficking."[2] We may reverse this finding only if it is clearly erroneous—that is, not "plausible in light of the record viewed in its entirety." *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996) (quoting *Serv. Emps. Int'l Union v. Fair Political Practice Comm'n*, 955 F.2d 1312, 1317 n.7 (9th Cir. 1992)).

The District Court's finding is plausible in light of the entire record. Indeed, it is well supported. The money was found in Roberto's bedroom along with ten-plus pounds of methamphetamine, guns, and pay-owe sheets showing that Roberto bought and sold methamphetamine in large amounts. When federal agents searched his house, Roberto said the money in his girlfriend's nightstand was hers, but he did not tell the agents anything about the ownership of the rest of the cash. Roberto signed a forfeiture agreement stating that the money constituted proceeds of narcotics

---

[2] The District Court's use of the phrase "beyond any reasonable doubt" did not misconstrue Mr. Hernandez's burden, which was to show that his title was superior to Roberto's by a preponderance of the evidence. 21 U.S.C. § 853(n)(6). The District Court correctly articulated and applied this standard, using the familiar "reasonable doubt" language to emphasize how clearly and convincingly the evidence showed that the cash constituted drug proceeds.

trafficking, and he also signed a plea agreement incorporating the forfeiture agreement. Roberto confirmed at the plea hearing that those agreements were true. In light of all of this evidence, the District Court was entitled to accord no evidentiary weight to Roberto's later statements in his interview with the AUSA, where he claimed for the first time that the money was his father's. The court plausibly found Roberto's interview statements "qualified and disingenuous" and "clearly calculated to 'support' his father's claim without risking criminal liability or his own credit for cooperation." In sum, the District Court's finding that the cash constituted drug proceeds was not clearly erroneous.

Mr. Hernandez faults the District Court for (in his words) ruling that "Roberto's crime extinguished Mr. Hernandez's legitimate ownership interest" in the bailed money. This argument is based on two flawed premises: speculation about the facts and a mischaracterization of the District Court's ruling.

Mr. Hernandez's argument is speculative because it rests on the assumption that Roberto used his father's cash to capitalize his drug business. However, there is no evidence that Roberto did so. Furthermore, if he did, that would mean Roberto was a faithless bailee, but it would not necessarily mean that the drug proceeds recovered from Roberto's bedroom were not forfeitable.

Mr. Hernandez's argument mischaracterizes the District Court's ruling because the court did not extinguish any property rights he possessed. Following the directives of the forfeiture statute, the District Court ruled only on "the validity of the petitioner's alleged interest in *the property*," i.e., the "property which has been ordered forfeited to the United States." 21 U.S.C. § 853(n)(2). The court considered

what the evidence showed about the money in Roberto's bedroom and ruled that it was forfeitable drug proceeds. Should other cash that Mr. Hernandez gave to Roberto ever be located, the District Court's ruling will not have extinguished any property rights Mr. Hernandez may have in that cash. To rule on Mr. Hernandez's petition, the District Court did not need to determine whether Mr. Hernandez had actually given cash to Roberto, or how much. The answers to those questions have no bearing on the forfeitability of the cash that was found in Roberto's bedroom and that the District Court concluded was drug proceeds.

Mr. Hernandez analogizes this case to *Alcaraz-Garcia*. There, the defendant was caught at the border with more than $35,000 in his boots. 79 F.3d at 772. After the defendant was convicted of failing to file a currency report and making a false statement to a border official, most of the cash was ordered to be forfeited. *Id.* Three individuals filed petitions under § 853, averring that they had given the defendant cash to take to their families in Mexico. *Id.* We concluded that the petitioners were bailors who "retained legal title to the bailed funds" and therefore "were entitled to . . . obtain an amendment to the forfeiture order under § 853(n)." *Id.* at 776.

Mr. Hernandez argues that as in *Alcaraz-Garcia*, he retained title to the forfeited cash. However, the ruling in *Alcaraz-Garcia*—that the cash was a bailment to which the petitioners retained superior title—was based not only on the law of bailments, but also on the facts of the case, *id.* at 772, which are distinguishable. The *Alcaraz-Garcia* petitioners stated that they had given the defendant money to take to their families in Mexico, and the defendant was caught attempting to cross the border into Mexico with the money. *Id.* at 772 & n.1, 776. Thus, the petitioners' factual

statements were supported by the circumstances under which the money was seized.

Here, by contrast, Mr. Hernandez's factual statements are neither supported nor undermined by the circumstances under which the cash was seized. Mr. Hernandez may have given money to Roberto for safekeeping, but what has become of that money is unknown. The money that was forfeited, on the other hand—the money whose ownership the District Court was required to decide, 21 U.S.C. § 853(n)(2)—was found together with drugs, guns, and pay-owe sheets, and Roberto stated in his plea and forfeiture agreements that the money constituted drug proceeds. Therefore, *Alcaraz-Garcia* does not provide a basis for reversal.

Mr. Hernandez also contends that the District Court erred by denying his petition on the basis that he was unable to prove that the exact currency he gave to Roberto was the same currency that was forfeited. Mr. Hernandez argues, correctly, that a bailor need not trace the exact currency that was bailed. *Bank of Am. Nat'l Trust & Sav. Ass'n v. Cal. Sav. & Commercial Bank*, 218 Cal. 261, 273 (1933) ("it is not required, that the identity of the [bailed] money . . . be preserved in specie, as by setting it aside in a marked bag or package"); *see also Niiya v. Goto*, 181 Cal. App. 2d 682, 687 (1960) (bailee must return "the identical thing bailed or the product of, *or substitute for*, that thing" (emphasis added)). But we do not affirm because the bills were not traced. Rather, we affirm because the evidence as a whole supports

the District Court's finding that the forfeited money was, in fact, drug proceeds.**[3]**

The text of § 853 reinforces that the bill tracing question is a non-issue. The statute requires forfeiture of "any property constituting, or derived from, any proceeds . . . obtained, directly or indirectly, as the result of [a drug] violation." 21 U.S.C. § 853(a). The statutory language expresses no concern with tracing particular currency. Instead, it is concerned with whether forfeited money was "derived from" a drug transaction, "directly or indirectly," in the sense that a drug sale resulted in the receipt of that amount of money.

Finally, Mr. Hernandez relies on *Bank of America*'s holding that "[t]he bank [as bailee] is under a duty to retain in cash at all times . . . an amount equal to" the bailments it has accepted. 218 Cal. at 276. Mr. Hernandez posits that because "[t]he last cash to remain" in an insolvent bank's coffers is presumed to be bailments, not account deposits, *id.*, the last cash remaining in Roberto's possession (i.e., the money found in his bedroom) similarly must be presumed to be Mr. Hernandez's bailment. This analysis is ultimately unpersuasive. *Bank of America* involved two pools of money: bailments and general deposits by bank account holders. It is not too much of a stretch to analogize the bailments in *Bank of America* to the alleged bailment here. But it *is* too great a leap to analogize the bank deposits in *Bank of America* with the drug money here. If *Bank of*

---

**[3]** Mr. Hernandez's tracing argument highlights another way this case is distinguishable from *Alcaraz-Garcia*. There, the cash in the defendant's boots may have been the same cash the petitioners gave him; the opinion does not mention any intervening exchanges of bills. *See* 79 F.3d at 772. But that distinction makes no difference. The traceability of the bills is beside the point.

*America* had dealt with bailments and drug money, instead of bailments and general deposits, the result may very well have been different.

Moreover, *Bank of America* stops short of ruling that a bailor is entitled to any money in the bailee's possession. The opinion explains, "It is not the doctrine of the law that special depositors [i.e., bailors] have a prior lien on all general assets of the bank in preference to other depositors and creditors . . . ." *Id.* If the bank's "cash balance . . . falls below the amount [of the bailment], the identity of the [bailment] is lost, and it is held that the preference of the [bailors] does not extend to general assets." *Id.* Instead, the bailors find themselves "on a par with general depositors." *Id.* In other words, they lose their preference in the bank's remaining cash and are no different than other parties (including account holders) to whom the insolvent bank owes money. That is what happened here: Mr. Hernandez testified that he gave Roberto a total of $76,000, but $73,390 was found in Roberto's bedroom.[4] Under *Bank of America*, because the full amount of the bailment was no longer in Roberto's possession, Mr. Hernandez would have become Roberto's general creditor, not a bailor. And as a general creditor, Mr. Hernandez would not be entitled to the forfeited cash. *See* 21 U.S.C. § 853(n)(6) (providing that petitioner must establish either that he has an interest in the forfeited property or that he is a bona fide purchaser for value); *see also Alcaraz-Garcia*, 79 F.3d at 773 & n.8 (analyzing whether petitioners met the specific requirements of § 853(n)(6) and rejecting their attempt to characterize themselves as "innocent owners").

---

[4] The initial amount seized was $75,790, but $2,400 belonged to Mr. Hernandez's girlfriend and was immediately returned to her.

For these reasons, the District Court did not err in denying Mr. Hernandez's petition.

## B.  Due Process

After Mr. Hernandez lost on his § 853 petition, he filed a motion to vacate. He argued that the Government had violated his due process rights because it interfered with his ability to call witnesses at the forfeiture hearing—specifically, that it "draft[ed] a plea agreement that prohibited his son from testifying" and "fail[ed] to release [Roberto] from that provision." The District Court construed the motion as one for relief from an order under Rule 60(b)(6) and denied it, concluding that while Mr. Hernandez had the right to present witnesses, that did not encompass the right to compel someone else to waive the Fifth Amendment privilege against self-incrimination.

On appeal, Mr. Hernandez presents a new version of his due process argument: that the Government interfered with his ability to call Roberto as a witness because of the AUSA's statements before the petition hearing. Mr. Hernandez points to the AUSA's assertion that lying in the presence of an agent would subject Roberto to prosecution for making false statements; his reminder of what was in the plea agreement; and his comment that Roberto was changing his story and that the AUSA did not believe him.

Mr. Hernandez relies solely on criminal due process cases. While the Government criticizes Mr. Hernandez on this score, arguing that forfeiture proceedings are civil, the Government does not take any position on what due process standard does apply. In *Alcaraz-Garcia*, we ruled that for the purpose of calculating the time to appeal, a criminal forfeiture proceeding is "*civil* in nature." 79 F.3d at 772 n.4. We need not determine whether this reasoning in *Alcaraz-*

*Garcia* extends to due process questions, because even if Mr. Hernandez was entitled to due process protections coextensive with those afforded to criminal defendants, he has not shown a violation.

In criminal proceedings, only "[u]nnecessarily strong admonitions against perjury aimed at discouraging defense witnesses from testifying have been held to deprive a criminal defendant of his [constitutional rights]." *United States v. Juan*, 704 F.3d 1137, 1141 (9th Cir. 2013) (quoting *United States v. Vavages*, 151 F.3d 1185, 1188 (9th Cir. 1998)). For example, it violates due process to "'gratuitously single[] out' the defense's sole witness for a 'lengthy admonition on the dangers of perjury,' including assuring the witness that if he lied on the stand, 'he would be prosecuted and probably convicted for perjury.'" *Id.* (quoting *Vavages*, 151 F.3d at 1188–89). However, "in many circumstances, warning a witness about the possibility and consequences of perjury charges is warranted." *Id.* at 1142. "[M]erely warning a witness of the consequences of perjury does not unduly pressure the witness's choice to testify or violate the defendant's right to due process." *Id.* (quoting *Williams v. Woodford*, 384 F.3d 567, 603 (9th Cir. 2004)).

In other circumstances, a prosecutor's stated belief that a potential witness is lying might be an "[u]nnecessarily strong admonition[]," *id.* at 1141—but not on these facts. During the plea proceedings, Roberto represented that the money constituted drug proceeds. After his father filed a petition to set aside the forfeiture, Roberto changed his story and said the money was his father's. If a potential witness makes two irreconcilable statements, it does not violate due process for the prosecutor to point out that both statements cannot be true. The AUSA's comments were "mere[] warning[s] . . . of

the consequences of perjury" that did not violate due process. *Id.*

Mr. Hernandez compares this case to *United States v. Henricksen*, 564 F.2d 197 (5th Cir. 1977). There, the Fifth Circuit concluded that the Government had hampered a witness's choice to testify, and therefore violated the defendant's due process rights, because the witness's plea agreement barred him from testifying in the criminal proceedings against the defendant. *Id.* at 198. Notably, however, the Government "confessed error" and requested reversal and remand for a new trial. *Id.* The Government in *Henricksen* had tried to subvert the truth-finding process by making relevant testimony unavailable. *See id.* The Government here, by contrast, was effectuating the forfeiture of the drug money. If Roberto's agreements had not included a provision that he would not contest the forfeiture and would not help anyone else to do so, Roberto could have simply forfeited the money and then embarked on litigation to get it back (either for himself or for someone else). His agreement that he would not try to undo his own criminal forfeiture is distinguishable from the impermissible agreement in *Henricksen* not to provide testimony in someone else's criminal trial.

## IV.  Conclusion

The District Court did not clearly err when it found as a factual matter that the cash in the bedroom was drug proceeds, and therefore its denial of Mr. Hernandez's § 853 petition was not erroneous. In addition, there was no due process violation in the AUSA's communications with Roberto.

Accordingly, we **AFFIRM**.