**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   16-10418 |
| Plaintiff-Appellee, | D.C. No.
1:13-cr-00512-DKW-1 |
| v. | |
| GEORGE LINDELL, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   16-10422 |
| Plaintiff-Appellee, | D.C. No.
1:13-cr-00512-DKW-2 |
| v. | |
| HOLLY HOAEAE, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Derrick Kahala Watson, District Judge, Presiding

Argued and Submitted February 12, 2019
Honolulu, Hawaii

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: TALLMAN, BYBEE, and N.R. SMITH, Circuit Judges.

George Lindell and Holly Hoaeae ("Defendants") appeal their convictions on multiple counts of mail fraud, wire fraud, and money laundering arising from a $28 million fraudulent scheme they called the "Parking Lot."[1] Hoaeae also appeals her sentence of 120 months imprisonment. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

**1**. Relying on *Luis v. United States*, 136 S. Ct. 1083, 1093 (2016) (plurality opinion), Defendants argue that the government violated their Sixth Amendment rights by improperly seizing Lindell's entire IRA, containing about $220,000 at the time of the initial seizure, thereby preventing them from hiring private counsel to represent them during their criminal proceedings. Defendants also argue that the district court erred under *Luis* by failing to immediately release some of the IRA funds for the remaining post-trial proceedings.

Dealing first with the pre-trial restraint of funds, Defendants forfeited this argument, as they failed to object to the government's continued restraint of allegedly untainted funds until after trial. *Puckett v. United States*, 556 U.S. 129, 134 (2009); *United States v. Ripinsky*, 20 F.3d 359, 365 (9th Cir. 1994). Thus, we

---

[1]Only Lindell was convicted of money laundering.

review for plain error. *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc).

We exercise our discretion to remedy a plain error only if four conditions are satisfied: (1) "there must be an error or defect"; (2) the error "must be clear or obvious, rather than subject to reasonable dispute"; (3) "the error must have affected the appellant's substantial rights"; and (4) the error must "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (internal citations and quotation marks omitted).

Defendants have failed to demonstrate plain error, as it is not clear or obvious that the government withheld "innocent funds needed to pay for counsel." *Luis*, 136 S. Ct. at 1095. Even assuming there were untainted funds in the IRA during the criminal proceedings, Defendants have failed to clearly demonstrate that those funds were needed to pay for counsel of choice. When Defendants originally challenged the government's allegedly improper restraint of untainted IRA funds (three months after Defendants were convicted), they argued that they needed those funds "to cover reasonable livelihood expenses for [Lindell's] wife and child," and did not mention or indicate that the funds were needed to retain private counsel. However, after *Luis* was issued (and a year after their conviction), Defendants for the first time asserted they had actually needed those funds to hire private counsel

3

to represent them at trial and for post-trial proceedings. The timing of this request suggests that Defendants never intended to hire counsel with any allegedly untainted IRA funds, but instead merely saw a promising argument for vacating their convictions after *Luis* was handed down. Nothing in the record necessitates a contrary conclusion. In these circumstances, it is not clear or obvious that the IRA funds were actually needed to pay for counsel at any time.[2]

For the same reason, we likewise conclude that even reviewing legal conclusions de novo and factual findings for clear error, *see United States v. Hernandez-Escobar*, 911 F.3d 952, 955 (9th Cir. 2018), the district court properly denied Defendants' request for immediate release of IRA funds for the remaining post-trial proceedings. As a result, Defendants have failed to satisfy their burden on appeal.[3]

**2**. Defendants argue that the jury instructions constructively amended the indictment by allowing the jury to convict based on an uncharged fraudulent nondisclosure theory. However, the court provided "jury instructions requiring the

---

[2]Indeed, even as he challenged the government's restraint of the IRA funds on *Luis* grounds, Lindell continued to simultaneously assert that the IRA funds should be released to cover his family's reasonable livelihood expenses.

[3]Because we conclude that Lindell's Sixth Amendment right to counsel of choice was not violated by the restraint of the entire IRA account, any potential claim Hoaeae asserts related to those funds also necessarily fails.

jury to find the conduct charged in the indictment before it may convict." *United States v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014); *see also United States v. Flores*, 802 F.3d 1028, 1040 (9th Cir. 2015) ("We presume the jury followed these instructions . . . ."). More specifically, the court told the jury that it must find "the charged scheme." The jury instructions "assur[ed] that the jury convicted the [Defendants] based solely on the conduct actually charged in the indictment." *Ward*, 747 F.3d at 1191. The court did not specifically characterize the charged scheme as a "Ponzi" scheme, but its failure to do so did not embolden the jury to disregard the court's instructions and convict based on an uncharged scheme, especially because the underlying indictment was also presented to the jury to consult during deliberations. Accordingly, we reject Defendants' argument.

**3.** Defendants argue that the district court abused its discretion by admitting evidence that they sold unlicensed securities and by declining to strike related allegations from the governing indictment. However, Defendants fail to contradict (or even acknowledge) the district court's ultimate finding that "[w]hether the defendants were licensed to sell these securities, whether these securities were in fact not registered, [and] whether they were required to be registered by law is highly probative . . . evidence of whether the defendants were operating a scheme to defraud and [is] highly relevant to the charged crimes of wire and mail fraud."

Accordingly, Defendants have failed to demonstrate this finding was clearly erroneous. In that light, it was within the district court's discretion to determine that the high probative value of the evidence to show their intent to defraud was not substantially outweighed by the risk of prejudice that would result from its admission. *See United States v. Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011) (giving substantial deference to the district court's Rule 403 rulings, "unless it 'lies beyond the pale of reasonable justification under the circumstances'" (quoting *United States v. Pineda-Doval*, 614 F.3d 1019, 1035 (9th Cir. 2010))).

**4.** Defendants argue that the district court abused its discretion by permitting Keith Cunningham to testify as a fact witness. They assert that Cunningham actually provided expert testimony, because he discussed his financial expertise and his opinion—which he expressed to Lindell years before the criminal proceedings—that the "Parking Lot" investment program run by Defendants was a Ponzi scheme.

Lay testimony is admissible if it is (1) "rationally based on the witness's perception"; (2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue"; and (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Here, Cunningham's testimony was relevant in establishing how he knew Lindell—the two met through Cunningham's business seminars—and the context in which Lindell disregarded Cunningham's advice by continuing to run the Parking Lot scheme in the same manner.  This was permissible fact testimony that was "helpful to" the jury in determining Lindell's knowledge of his potential wrongdoings and his intent to defraud his clients. *See United States v. Gadson*, 763 F.3d 1189, 1207–09 (9th Cir. 2014).

Moreover, the district court properly instructed the jury that Cunningham was not an expert witness, that his opinion was not determinative or substantive evidence, and that the jury must consider the testimony "only for the limited purpose of demonstrating Mr. Lindell's knowledge, intent and state of mind following his discussions with Mr. Cunningham." Thus, even if it were error to admit Cunningham's testimony, that error was harmless. *United States v. Christensen*, 828 F.3d 763, 800 (9th Cir. 2015) ("We routinely trust juries to follow limiting instructions when evidence is erroneously admitted.") (internal

citation omitted). Under these circumstances, the court did not abuse its discretion in permitting Cunningham to testify.[4]

**5.** Hoaeae argues that the district court erred in enhancing her sentence pursuant to two separate provisions of the United States Sentencing Guidelines. She asserts that the court utilized the wrong legal standard for the sophisticated means enhancement. *See* U.S.S.G. § 2B1.1(b)(10)(C). She also asserts that the court erred in concluding she occupied a position of trust. *See* U.S.S.G. § 3B1.3.

The court used the correct legal standard under U.S.S.G. § 2B1.1, as it expressly noted that the enhancement applies to "intentionally employing" sophisticated means. Additionally, the court found that Hoaeae "participated in the preparation and delivery of [the diploma-like promissory] notes to her client investors." This finding is not clearly erroneous, as it is consistent with the undisputed fact that Hoaeae "signed and delivered the notes." Consequently,

---

[4]In challenging Cunningham's testimony, Defendants also argue that the government violated their Sixth Amendment rights to confront witnesses regarding testimonial statements. On that basis, they claim that the government should not have questioned Cunningham regarding statements contained in an e-mail sent to Lindell by Frank Clark. However, Clark's e-mail was a response to Lindell's decision to resign from a business advisory council run by Cunningham, and it was sent well before any criminal proceedings were initiated. There is no indication that Clark believed the statements would be part of a future court record. Accordingly, the statements were not testimonial, but were admitted and admissible as business records. *See Crawford v. Washington*, 541 U.S. 36, 51–52, 55 (2004).

because Hoaeae concedes that the creation and use of the promissory notes constituted sophisticated means, the court did not err in concluding that she intentionally engaged in the use of sophisticated means.

The court also did not err in concluding that Hoaeae held a position of trust pursuant to U.S.S.G. § 3B1.3. It is clear from the record that Hoaeae was intimately aware of all of her clients' financial needs and goals, and that she used that familiarity to build personal relationships with her clients in frequent one-on-one meetings as their financial advisor. Based on these relationships, a reasonable client would trust her to disclose all information in her possession, public and nonpublic, bearing on her recommended financial investments. *See United States v. Laurienti*, 731 F.3d 967, 973–74 (9th Cir. 2013). Thus, Hoaeae held a position of trust, and the district court did not err in applying an enhancement based on her abuse of that position. *See id.*

**AFFIRMED.**